NOT DESIGNATED FOR PUBLICATION

No. 121,248

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of T.M. and A.M.,
Minor Children.

MEMORANDUM OPINION

Appeal from Harvey District Court; MARILYN M. WILDER, judge. Opinion filed November 27, 2019. Affirmed.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellant natural mother.

*Kaitlin M. Dixon*, assistant county attorney, for appellee.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

PER CURIAM: C.M. (Mother) appeals the district court's termination of her parental rights to her children, A.M. and T.M., claiming the evidence does not support the district court's finding that she was unfit for the foreseeable future. The district court also terminated the parental rights of both children's fathers, neither of whom appeared at trial and neither is participating in this appeal. Because the record supports the district court's ruling, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This case began September 1, 2017, based on reports received by the Kansas Department for Children and Families (DCF) that Mother and the children were living in a tent by a lake and were potentially homeless. A separate report suggested the family

1

had been evicted from their home and the landlord had found drug paraphernalia, which spoke to concerns that Mother was using drugs. The district court held a temporary custody hearing and ordered the children into DCF custody.

Less than a month later, the district court adjudicated the children as in need of care and ordered them to remain in DCF custody with an out-of-home placement. At the dispositional hearing three months later, the district court adopted the permanency plan created by Saint Francis Community Services (SFCS) with the goal of reintegrating the children into the family home. The case plan required Mother to complete a parenting course; submit to random mouth swabs, complete a substance abuse evaluation in the event of a positive test, and sign a release of information form for SFCS to obtain documentation of completion; obtain and maintain appropriate housing; obtain a mental health evaluation and follow the recommendations; look for employment and keep SFCS updated on her disability benefit status; not have unsupervised contact with the children until authorized by the court; and interact appropriately with the children. Three months after the dispositional hearing, the district court changed the case goal from reintegration to a dual goal of reintegration/adoption.

Over a year after the children were adjudicated children in need of care, a community review board hearing took place; the board recommended termination of Mother's parental rights. The board listed Mother's continued drug use, unemployment, and lack of housing as barriers to permanency. Mother objected to the recommendation. The district court determined that reintegration was no longer a viable goal, and on January 17, 2019, the State moved to terminate Mother's parental rights.

At the termination hearing, the State presented evidence of Mother's continued use of methamphetamine, her homelessness, her failure to obtain employment or disability benefits, and her failure to complete reintegration tasks. At the end of the hearing, the district court terminated Mother's parental rights based on four statutory factors:

- K.S.A. 2018 Supp. 38-2269(b)(3)—the use of intoxicating liquors or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child;

- K.S.A. 2018 Supp. 38-2269(b)(7)—failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

- K.S.A. 2018 Supp. 38-2269(b)(8)—lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child; and

- K.S.A. 2018 Supp. 38-2269(c)(3)—failure to carry out a reasonable plan approved by the court directed toward integrating the child into a parental home.

Mother timely appeals.

DID THE DISTRICT COURT ERR IN TERMINATING MOTHER'S PARENTAL RIGHTS?

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the law considers this right to be fundamental. *In re R.S.*, 50 Kan. App. 2d 1105, 1115, 336 P.3d 903 (2014). The legal bonds between parent and child may therefore be extinguished only upon clear and convincing evidence of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d at 1115.

As provided in K.S.A. 2018 Supp. 38-2269(a), the State must prove the parent is unfit "by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine factors that singularly or in combination may constitute unfitness. K.S.A. 2018 Supp. 38-2269(b), (f). The statute lists four other factors to be considered when, as here, the parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c).

In reviewing the sufficiency of the evidence supporting "a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's rights should be terminated." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, "the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

Mother contends that the evidence does not support the district court's finding that she was unfit to parent the children and primarily argues that evidence does not support the finding that she is unfit for the foreseeable future. Although she acknowledges that she failed to complete her case plan tasks initially, Mother asserts that she ultimately made "significant progress towards the most important tasks of sobriety and housing."

We begin by reviewing the evidence in the record and each of the statutory factors relied upon by the trial court in reaching its decision.

4

A. *There is clear and convincing evidence to support the district court's finding that Mother's use of drugs was such as to render her unable to care for the ongoing needs of her children.*

A district court may terminate a parent's rights to his or her child if there is clear and convincing evidence of the "use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2018 Supp. 38-2269(b)(3). Here, there is evidence to support this finding.

Four months after DCF took custody of her children, a SFCS caseworker received a concerning text from Mother that she believed was drug-related and was accidently sent to her. The text stated: "That's good shit but when I measured it in the package I got 2.5 oh and I'm out already." The next day, Mother texted the caseworker:

> "Hi, it's [Mother] and this is my new number. After I sent you a text about running late yesterday I stopped at Casey's to use the restroom. I must have left my phone there. I went back and it was gone so I had to get a new phone. So if you should receive any texts after 3 PM yesterday not sure why you would but you never know, it was not from me."

In her testimony, Mother admitted she used methamphetamine before and throughout the case until she sought treatment at the Women's Recovery Center (WRC). She gave varying accounts of the length of treatment but claimed she spent at least three months at the WRC and completed the residential program. Mother testified that she entered treatment in July of 2018. Even so, Mother failed to provide documentation from the WRC to verify the dates, length, or completion of treatment. Mother said she contacted the WRC and requested her completion paperwork but testified that she never received it.

SFCS caseworkers testified that Mother attended this treatment but discharged herself early because she did not want to miss her ride. And despite Mother's alleged three months in treatment, Mother tested positive for methamphetamine the weekend after she discharged herself. Mother claimed she has been sober since September 2018 but admitted she relapsed after leaving treatment. She repeatedly refused to submit to testing—even during the week of the termination hearing. Mother offered a variety of excuses for refusing the drug testing. In the weeks preceding the termination hearing, when requested to take a test, Mother told the SFCS worker she did not have time because she had a job interview. Although she told the SFCS worker that she would come back and take the test after the interview, Mother did not return. Mother refused to submit to testing on the Tuesday before the Friday trial of this case. Her explanation for the refusal was that her visit with the children was late, she was angry about it, and she did not have time for the test. Although the testing would take only a couple of minutes, Mother testified that a couple of minutes was a significant delay when it involved her schedule. She testified she went back the next day and offered to submit to testing but SFCS refused so they would have more evidence to make Mother "look bad."

Mother admitted she was facing a criminal drug charge arising from a June 2018 incident. She was arrested in October 2018 for failing to appear in court in that case. A report from SFCS clarified that in October 2018, Mother was charged with possession of opiates/opium/narcotic drug and certain stimulants, unlawful possession of a controlled substance, and use/possession with intent to use drug paraphernalia into human body.

Mother testified that she began the process of attending outpatient drug treatment in November 2018 and provided a handwritten letter from her counselor in evidence. Her outpatient treatment started three days before the termination hearing. There is no definite time frame for completion of that treatment, according to Mother; the treatment will be as long "as it needs to be" until her counselor determines she is "okay."

As recognized by the district court at the termination hearing, Mother has "no track record of stability regarding drug use." Mother presented inconsistent testimony about her treatment at the WRC and failed to provide documentation of this treatment. In her 2017 drug and alcohol evaluation, Mother told the evaluator that she had been addicted to crack cocaine in 2008 but did not disclose in any way her ongoing methamphetamine use. Mother refused at least a dozen drug tests throughout the case, and she admitted she refused many times because she was using drugs. Mother claimed to be sober since September 2018 but according to a SFCS caseworker, Mother had refused to submit to any SFCS drug tests since December 2018, including three tests the week of the termination hearing.

Mother gave multiple excuses for why she would not submit to the tests. SFCS caseworkers testified that Mother refused because she was ill, she refused because she was being evicted from her home and needed to get her things, she refused because her children were present, she refused because she got a phone call and needed to leave immediately, and she refused because she had a job interview. Mother testified that she refused tests at the beginning of the case because she "was not okay" and "probably still in active addiction." Mother also testified that in the past she refused tests because she was using methamphetamine. When asked why she refused tests recently, Mother testified that she had not eaten yet and wanted to do so before completing the mouth swab. Mother also testified that she refused the week of the termination hearing because she was frustrated with SFCS. Mother testified, "I was angry with St. Francis, which if anybody has to deal with them they would understand the anger and frustration comes along."

Mother did, however, provide seven clean drug test results at the termination hearing. The district court noted that these results were obtained by Mother, rather than by SFCS, and the most recent clean test was obtained in January 2019. The district court noted that it did not "have any proof from the last two months whether [Mother was]

clean or not." In its ruling terminating Mother's parental rights, the district court noted Mother's inconsistent testimony regarding the length and timing of treatment, the lack of verification it was actually completed, her lack of candor about drug use and her 2018 arrest, and her refusal to submit to SFCS drug testing throughout the case—including the week of the termination trial.

Viewing these facts, as we must, in the light most favorable to the State, and in giving due deference to the trial court's evaluation of Mother's credibility, we find the State presented clear and convincing evidence that Mother's use of methamphetamine rendered her unable to care for the ongoing physical, mental, or emotional needs of her children.

B.    *There was clear and convincing evidence to support the district court's finding that reasonable efforts made to rehabilitate the family failed.*

A district court may terminate a parent's rights to his or her child if there is clear and convincing evidence that the reasonable efforts made by public or private agencies to rehabilitate the family have failed. K.S.A. 2018 Supp. 38-2269(b)(7). Here, the evidence supports this finding because Mother consistently refused to work with the resources offered to her.

Along with working with Mother regarding her drug use, SFCS gave Mother resources to obtain suitable housing. According to a SFCS caseworker, Mother did not use these resources to obtain housing for a year after her children were placed in DCF custody. Mother obtained housing in November 2018 that SFCS deemed appropriate after completing a walkthrough. But, prior to November 2018, Mother had an unstable housing situation. At the termination hearing, Mother had difficulty explaining where she had lived before. Mother testified that she had been living in tents with her children at East Lake when the children were placed in DCF custody. Then, Mother lived in a motel for

around a month before she moved into her friend's camper on the friend's property. Mother lived in the camper for around three months until she was evicted. After leaving the camper, Mother bounced around from January 2018 until she went to the WRC in July 2018. Following her time at WRC, she was again homeless until she located her present housing in November 2018.

Mother also delayed or ignored court orders. Mother completed a drug and alcohol evaluation at the beginning of the case but conceded that she lied about her methamphetamine use to the counselor performing the evaluation. The district court ordered Mother to have no contact with any of her children throughout the case, but Mother ignored this order consistently, primarily with an older daughter A.R., who is not part of the case because she turned 18 before the termination hearing. A SFCS caseworker testified that Mother tried to pick up A.M. and T.M. from school without SFCS permission. Mother was arrested at the school for driving on a suspended license. Mother testified that she thought the no-contact order only pertained to her oldest child, A.R. The district court did not believe Mother's testimony that she was unaware of the no-contact order. Although A.R. is no longer a part of this proceeding, Mother's actions with regard to A.R. throughout the case were concerning to the district court. A SFCS caseworker testified that A.R.'s father, with whom A.R. was placed, believed that Mother and A.R. had been communicating during the case. A SFCS caseworker also testified that Mother would have inappropriate conversations with A.R., including Mother telling A.R. that she "got laid for the first time in a month." The SFCS case plan directed Mother not to engage in inappropriate conversations with the children.

The evidence supports the district court's finding that despite the assistance offered by SFCS and others, these reasonable efforts failed to reintegrate the family. Mother refused to work with SFCS, failed to find suitable housing for over a year, and ignored court orders to have no contact with her children.

9

C.     *There is clear and convincing evidence to support the district court's finding that Mother failed to adjust her circumstances, conduct, or conditions to meet the needs of her children.*

A district court may terminate a parent's rights to his or her child if there is clear and convincing evidence that the parent has failed to adjust his or her circumstances, conduct, or conditions to meet the needs of the children. K.S.A. 2018 Supp. 38-2269(b)(8). Mother's last-minute efforts to adjust to her circumstances were unpersuasive to the district court, and clear and convincing evidence supports this conclusion.

As mentioned, Mother testified that she sought treatment at the WCR, but, despite this treatment, Mother relapsed the weekend she discharged herself from treatment. Mother testified that she started attending outpatient treatment the week of the termination hearing, but by the time of the termination hearing this case had been pending almost 18 months. During this period Mother was also arrested on drug-related charges. These events show that Mother failed to adjust her circumstances, conduct, and conditions necessary to overcome her addiction and put the needs of her family first.

At the time of her termination hearing, Mother also had not obtained employment. Mother testified that she has been trying to receive disability benefits for over nine years after she developed a medical condition, ankylosing spondylitis. Mother testified that her disability attorney "didn't want me looking for work because of the chance of ruining fighting for disability." But Mother testified that after losing her most-recent disability claim that she had "to let that go" and got a job at a convenience store because her children are more important. Mother quit the job after two days because it required her to be on her feet for six hours and she testified she was not physically able to do that. Mother failed to provide SFCS with verification of that job. At the time of the termination hearing, Mother claimed that she had an upcoming job interview but was presently unemployed.

Mother conceded that she cannot financially provide for herself and her children without the help of others. Mother testified that her rent, water, and trash are free. She receives food stamps to pay for food, and her church helps pay for her other bills, such as electricity, heat, car payment, gas, and clothing. Mother said she was unsure how long the generosity of her church would last but she is "sure they would be there for us as long as they need to be." She has been involved with the church since November 2018. Mother testified that she plans on financially supporting the family by getting a job.

Along with Mother's issues with addiction and financial support, there was also testimony about Mother's interactions with SFCS. A SFCS caseworker testified that at first Mother would interact appropriately with SFCS workers, but Mother became more aggressive recently. The caseworker explained that Mother would become argumentative, would blame caseworkers, and say that the workers "just want to take her kids." Mother's visits with the children also never went further than being supervised by SFCS.

Mother's delays in addressing her addiction, together with refusing to adequately address her employment situation, support the district court's finding that Mother had not changed her circumstances and conditions necessary to meet the needs of her children. Mother conceded that she cannot provide for herself or her family without help from others, and apart from an upcoming interview, provided no support for how she plans on changing her circumstances in the future.

D.    *There is clear and convincing evidence to support the district court's finding that Mother failed to carry out a reasonable plan directed toward integrating the child into the parental home.*

A district court may terminate a parent's rights to his or her child if the child is not in the custody of the parent and there is clear and convincing evidence that the parent failed to carry out a reasonable plan directed toward reintegrating the parent and child.

11

K.S.A. 2018 Supp. 38-2269(c)(3). Here, Mother displayed a lack of effort to complete most of the reintegration tasks. Mother's reintegration tasks and outcomes were testified to as follows:

- Mother was to abstain from drugs and alcohol. She admitted using methamphetamine throughout most of the case. Testimony showed that Mother either tested positive or refused to submit the majority of drug tests requested by SFCS.

- Mother was to obtain and maintain appropriate housing and to look for employment. Mother did not obtain housing for over a year after this case began and refused to look for employment until the time of the termination hearing.

- Mother needed to complete a mental health assessment and follow recommendations. According to SFCS, Mother started, but never completed, the full evaluation. Mother admits to leaving before the evaluation was completed but claims to have returned and completed it. Yet, no report was ever provided to SFCS and mother admits she has been unable to obtain any report. In September 2018, Mother completed a psychological evaluation for her disability application and admitted this evaluation as an exhibit at her termination hearing. The district court noted that Mother was not truthful with the evaluator about her arrest record or drug use history.

- Mother was to inform SFCS of any changes of address, phone number, or employment. A SFCS caseworker testified that Mother "sometimes" updated SFCS with this information.

- Mother was to have no unsupervised contact with the children. As shown above, Mother consistently ignored this order when she would communicate with A.R. and tried to have an unsupervised visit with her children at school.

- Mother was to interact appropriately with the children during visits, Mother was not to talk about inappropriate topics, and Mother was not to encourage the children not to follow the rules of placement. As described above, Mother had inappropriate conversations with A.R. Mother testified she had a strong bond with the children, and a SFCS caseworker agreed that Mother interacted well with her children during visits and that they have a good bond.

In sum, based on a review of the full evidentiary record considered in a light favoring the State, a rational fact-finder could determine to a high probability that Mother was unfit to parent her children at the time of the termination hearing based on the four factors the court identified.

E.      *Evidence supports the district court's finding that Mother's conduct or condition was unlikely to change in the foreseeable future.*

Having found unfitness, a district court must also determine whether the conduct or condition is unlikely to change in the foreseeable future. K.S.A. 2018 Supp. 38-2269(a).

"When assessing the foreseeable future, this court uses 'child time' as a measure. The Revised Kansas Code for Care of Children—K.S.A. 2018 Supp. 38-2201 et seq.— recognizes that children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'"

13

differs from "'adult time"' in care proceedings 'in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's')." *In re M.S.*, 56 Kan. App. 2d 1247, 1263-64, 447 P.3d 994 (2019).

Here, there is support for the district court's determination that Mother's unfitness was unlikely to change in the foreseeable future. Mother argues that she demonstrated "secondary change" because she "demonstrated an ability to recognize the error of her ways and make a change for the better." Although Mother did show some change, the record shows that the issues that were present in Mother's life at the beginning of the case were still present at the time of the termination hearing.

Mother did complete some of the reintegration tasks, but she showed a significant unwillingness to work with SFCS and would only seek assistance as she saw fit. For example, Mother refused to submit drug tests through SFCS but sought out her own tests through a separate agency. Mother was still refusing to submit tests to SFCS the week of the termination hearing. And Mother only began outpatient treatment for a methamphetamine addiction three days before the termination hearing, after this case had been pending for nearly 18 months.

Although Mother ultimately obtained suitable housing, Mother has not found employment and could not explain how she could financially support her children for the foreseeable future. Mother relies on the help of public agencies and her church to provide support for all basic necessities, including rent, water, electricity, heat, food, clothing, and transportation. Mother did not know how long the generosity of her church would continue but testified that she had a job interview coming up. Apart from the church and the upcoming job interview, Mother had no concrete plans for how she would support her children in the future.

In its ruling, the district court noted that T.M. had been in DCF custody for about a third of his life. After nearly 18 months, the court observed it had no verification of completion of any drug treatment, or her disability status, and noted Mother's inconsistent testimony about her drug usage and job/disability plans and her continuing refusal to cooperate with SFCS. The totality of evidence supports the district court's finding that Mother's unfitness is unlikely to change in the future.

F.    *The district court did not abuse its discretion in finding that termination of Mother's parental rights was in the best interests of the children.*

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child[, giving] primary consideration to the physical, mental and emotional health of the child." K.S.A. 2018 Supp. 38-2269(g)(1). This decision is within the sound discretion of the district court, and the district court makes that decision based on a preponderance of the evidence. An appellate court reviews the district court's decision for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d at 1115-16. A district court exceeds its broad latitude if its ruling is based on an error of law or fact or is "arbitrary, fanciful, or unreasonable." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013).

Because the facts in the record support the district court's findings, the question then becomes whether no reasonable district court would come to the same conclusion. Here, as stated, the evidence shows that Mother could not provide stability for her children because of her struggle with her addiction to methamphetamine, she lacked motivation to find employment, she waited over a year to obtain appropriate housing, and she often refused to work with SFCS to complete the required reintegration tasks. Mother's current outpatient treatment is of undetermined duration, she admits she cannot presently care for her children, and she has no definite plan on how to reach the point

15

where she can parent the children. She simply asks for more time. The district court concluded that it was in the children's best interests to have permanency and it "can't let the kids continue to wait" for Mother to change her circumstances. The evidence here is substantial, and we find no abuse of discretion in the district court's termination of Mother's parental rights to A.M. and T.M.

Affirmed.